# YOUELL DEP.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - -X
MICHAEL G. ZITO, JR.,                :
            Plaintiff                :
                                     :
VS                                   : 3:02CV277(JCH)
                                     :
SBC PENSION BENEFIT PLAN, SBC        :
COMMUNICATIONS, INC., SOUTHERN       :
NEW ENGLAND TELEPHONE COMPANY and    :
PRICEWATERHOUSE LLP,                 :
            Defendants               :
- - - - - - - - - - - - - - - - - -X

Deposition of WILLIAM YOUELL taken at the offices of Tyler, Cooper & Alcorn, 205 Church Street, New Haven, Connecticut, before Audra Quinn, RPR, Licensed Shorthand Reporter #106, and Notary Public, in and for the State of Connecticut on May 30, 2003, at 10:00 a.m.



DEL VECCHIO REPORTING SERVICES, LLC
PROFESSIONAL SHORTHAND REPORTERS

117 RANDI DRIVE              100 PEARL ST., 14th FL.
MADISON, CT 06443            HARTFORD, CT 06103-4506
  203 245-9583                   800 839-6867

1        MS. ALEXANDER:  Object to the form.
2           What package?  There are lots of different
3           kinds of packages.
4  BY MR. CLARK:
5     Q    How would it work if there were any given
6  retirement incentive package announced?
7           MS. ALEXANDER:  Object to the form.
8     A    Is your question how would the announcement
9  be made?
10    Q    How would you find out about it?
11    A    We would typically receive an e-mail which
12 would be company-wide that would announce the severance
13 package.  That's how I would find out.
14    Q    That would be your notice, and would all
15 employees get that same notice, same time?
16    A    Broad distribution.
17    Q    So is it fair to say you didn't know any more
18 than what Mike Zito would know at the same time?
19    A    That's fair to say.
20    Q    On those occasions, would he open up
21 discussions with you to try to find out more?
22          MS. ALEXANDER:  Object to the form.
23    A    I don't think so.  The message would come out
24 and the detail of the package or the offer or whatever
25 it was and that would be the extent of the

C E R T I F I C A T E

   I hereby certify that I am a Notary Public, in and for the state of Connecticut, duly commissioned and qualified to administer oaths.

   I further certify that the deponent named in the foregoing deposition was by me duly sworn, and thereupon testified as appears in the foregoing deposition; that said deposition was taken by me stenographically in the presence of counsel and reduced to typewriting under my direction, and the foregoing is a true and accurate transcript of the testimony.

   I further certify that I am neither of counsel nor attorney to either of the parties to said suit, nor am I an employee of either party to said suit, nor of either counsel in said suit, nor am I interested in the outcome of said cause.

   Witness my hand and seal as Notary Public this 2nd day of June, 2003.

                                    _____
                                    Audra Quinn, RPR, LSR
                                    Notary Public

My commission expires: 7/31/2006
LSR No. 106

# AUTHORITY

Case 3:02-cv-00277-JCH    Document 56-3    Filed 11/03/2003    Page 5 of 15

Case 3:02-cv-00277-JCH   Document 56-3   Filed 11/03/2003   Page 6 of 15

338 F.3d 407                                                                                          Page 1
30 Employee Benefits Cas. 2249, Pens. Plan Guide (CCH) P 239840
**(Cite as: 338 F.3d 407, 2003 WL 21557397 (5th Cir.(Tex.)))**

**H**

United States Court of Appeals,
Fifth Circuit.

William MARTINEZ; Frank Ditta; and Lafayette Kirksey, Plaintiffs-Appellants,
v.
SCHLUMBERGER, LTD.; and Schlumberger Technology Corp., Defendants-Appellees.

No. 02-20173.

July 9, 2003.

Retired employees brought action in state court against employer, alleging state-law claims of fraud, fraudulent inducement, negligence, and gross negligence, arising from statements employer allegedly made in response to employees' inquiries regarding future retirement plan benefits before they retired. Following removal on ground that Employee Retirement Income Security Act (ERISA) preempted state-law claims, employer moved for summary judgment. The United States District Court for the Southern District of Texas, Melinda Harmon, J., 191 F.Supp.2d 837, granted motion. Employees appealed. The Court of Appeals, Patrick E. Higginbotham, Circuit Judge, held that: (1) an employer-administrator has no fiduciary duty under ERISA to affirmatively disclose whether it is considering amending its benefit plan, and (2) employer had no duty to disclose to employees that it was considering an early retirement offering.

Affirmed.

West Headnotes

**[1] Pensions ⚷43.1**
296k43.1 Most Cited Cases

ERISA does not expressly enumerate the particular duties of a fiduciary, but rather relies on the common law of trusts to define the general scope of a fiduciary's responsibilities. Employee Retirement Income Security Act of 1974, § 404(a)(1), 29 U.S.C.A. § 1104(a)(1).

**[2] Pensions ⚷47**
296k47 Most Cited Cases

Trust principles impose a duty of disclosure upon an ERISA fiduciary when there are material facts affecting the interest of the beneficiary which the fiduciary knows the beneficiary does not know, but needs to know for his protection. Employee Retirement Income Security Act of 1974, § 404(a)(1), 29 U.S.C.A. § 1104(a)(1).

**[3] Pensions ⚷44**
296k44 Most Cited Cases

In suits charging breach of fiduciary duty under ERISA, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary, that is, was performing a fiduciary function, when taking the action subject to complaint. Employee Retirement Income Security Act of 1974, § 404(a)(1), 29 U.S.C.A. § 1104(a)(1).

**[4] Pensions ⚷83.1**
296k83.1 Most Cited Cases

An ERISA plan participant may bring suit for breach of fiduciary duty to obtain appropriate equitable relief to redress violations of ERISA. Employee Retirement Income Security Act of 1974, § 404(a)(1), 29 U.S.C.A. § 1104(a)(1).

**[5] Pensions ⚷47**
296k47 Most Cited Cases

ERISA's disclosure requirements do not themselves mandate that an employer disclose information regarding the future of a benefit plan; such act is discretionary. Employee Retirement Income Security Act of 1974, § 404(a)(1), 29 U.S.C.A. § 1104(a)(1).

**[6] Pensions ⚷44**
296k44 Most Cited Cases

**[6] Pensions ⚷47**
296k47 Most Cited Cases

Even if disclosure of an ERISA plan's future is discretionary, once an employer chooses to exercise its discretionary authority by informing the employees of the future status of a benefit plan, it acts as a fiduciary; thus, the employer has a duty under ERISA not to misrepresent the truth, which would be inconsistent with the duty under ERISA to act solely in the interests of the participants and beneficiaries. Employee Retirement Income Security Act of 1974, § 404(a)(1), 29 U.S.C.A. § 1104(a)(1).

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Case 3:02-cv-00277-JCH    Document 56-3    Filed 11/03/2003    Page 7 of 15

338 F.3d 407                                                                                                    Page 2
30 Employee Benefits Cas. 2249, Pens. Plan Guide (CCH) P 239840
(Cite as: 338 F.3d 407, 2003 WL 21557397 (5th Cir.(Tex.)))

**[7] Pensions ⚷47**
296k47 Most Cited Cases

An employer, if it chooses to communicate about the future of a participant's ERISA plan benefits, has a fiduciary duty under ERISA to refrain from misrepresentations. Employee Retirement Income Security Act of 1974, § 404(a)(1), 29 U.S.C.A. § 1104(a)(1).

**[8] Pensions ⚷43.1**
296k43.1 Most Cited Cases

**[8] Pensions ⚷47**
296k47 Most Cited Cases

In determining whether an employer has a fiduciary duty not to misrepresent prospective changes to retirement benefits in an ERISA plan, court uses a fact-specific approach, in which the overarching question is whether there is a substantial likelihood that a reasonable person in the participants' position would have considered the allegedly misrepresented information important in making a decision to retire. Employee Retirement Income Security Act of 1974, § 404(a)(1), 29 U.S.C.A. § 1104(a)(1).

**[9] Pensions ⚷47**
296k47 Most Cited Cases

An employer-administrator has no fiduciary duty under ERISA to affirmatively disclose whether it is considering amending its benefit plan. Employee Retirement Income Security Act of 1974, § 404(a)(1), 29 U.S.C.A. § 1104(a)(1).

**[10] Pensions ⚷44**
296k44 Most Cited Cases

An employer does not act in a fiduciary capacity under ERISA by simply amending an ERISA plan. Employee Retirement Income Security Act of 1974, § 404(a)(1), 29 U.S.C.A. § 1104(a)(1).

**[11] Pensions ⚷47**
296k47 Most Cited Cases

Employer-administrator of ERISA plan had no duty to disclose to plan participants that it was considering an early retirement offering. Employee Retirement Income Security Act of 1974, § 404(a)(1), 29 U.S.C.A. § 1104(a)(1).

**[12] Pensions ⚷47**
296k47 Most Cited Cases

Alleged representations by employer's personnel employees, in response to inquiries from ERISA plan participants about to retire, that they knew of no new voluntary retirement plan were not material or misleading, as required to establish participants' breach of fiduciary claims under ERISA, though such new plan was implemented after participants retired; statements were made before employer had actually decided to implement new plan. Employee Retirement Income Security Act of 1974, § 404(a)(1), 29 U.S.C.A. § 1104(a)(1).

**[13] Pensions ⚷47**
296k47 Most Cited Cases

Statement by coworker to ERISA plan participant, indicating that employer was doing well and would not be offering early retirement packages because it would cause loss of good employees, was unsupported speculation and, therefore, was not material misrepresentation under ERISA. Employee Retirement Income Security Act of 1974, § 404(a)(1), 29 U.S.C.A. § 1104(a)(1).

**[14] Pensions ⚷47**
296k47 Most Cited Cases

False statements, including statements about future plan changes, may constitute material misrepresentations in violation of ERISA even if no plan change is being seriously considered at the time. Employee Retirement Income Security Act of 1974, § 404(a)(1), 29 U.S.C.A. § 1104(a)(1).

*409 Martin A. Shellist (argued), Shellist, Lore & Lazarz, Houston, TX, for Plaintiffs-Appellants.

Tony P. Rosenstein, Katherine Traverse Vukadin (argued), Baker Botts, Houston, TX, for Defendants-Appellees.

Appeal from the United States District Court for the Southern District of Texas.

Before HIGGINBOTHAM, EMILIO M. GARZA and DENNIS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Case 3:02-cv-00277-JCH    Document 56-3    Filed 11/03/2003    Page 8 of 15

338 F.3d 407                                                                                                 Page 3
30 Employee Benefits Cas. 2249, Pens. Plan Guide (CCH) P 239840
(Cite as: 338 F.3d 407, 2003 WL 21557397 (5th Cir.(Tex.)))

**\*\*1** This case presents the question whether the Employee Retirement Income Security Act of 1974 ("ERISA") [FN1] imposes upon a company that acts as administrator of its employee benefit program a duty to truthfully disclose, upon inquiry from plan participants or beneficiaries, whether it is considering amending the benefit plan. Although the majority of other circuits have already confronted this issue, [FN2] it is one of first impression for our circuit. In line with the majority rule of other circuits, the district court concluded that such a duty does not arise until the company is "seriously considering" a plan change, and granted summary judgment for the defendant employer based on its conclusion that the employer was not seriously considering the plan change at the time the employee plaintiffs inquired about whether the company intended to amend the benefit program. We affirm, although for reasons different from those relied upon by the district court.

FN1. 29 U.S.C. § 1001 et seq.

FN2. See Wayne v. Pac. Bell, 238 F.3d 1048, 1050-51, 1055 (9th Cir.2001); Ballone v. Eastman Kodak Co., 109 F.3d 117, 122-26 (2d Cir.1997); Vartanian v. Monsanto Co. (Vartanian II), 131 F.3d 264, 268 (1st Cir.1997); Hockett v. Sun Co., 109 F.3d 1515, 1522 (10th Cir.1997); McAuley v. Int'l Bus. Machs. Corp., 165 F.3d 1038, 1043-45 (6th Cir.1999); Fischer v. Phila. Elec. Co. (Fischer II), 96 F.3d 1533, 1538-44 (3d Cir.1996); Wilson v. S.W. Bell Tel. Co., 55 F.3d 399, 405 (8th Cir.1995); Barnes v. Lacy, 927 F.2d 539, 544 (11th Cir.1991).

I.

William Martinez, Frank Ditta, and Lafayette Kirksey, long-time employees of Schlumberger Ltd. and Schlumberger Technology Corp., collectively "Schlumberger," took early retirement effective July 1, 1998. Prior to July 1, each had asked personnel representatives at Schlumberger whether the company planned to implement an enhanced retirement incentive program, and personnel told them that they knew nothing about a new plan. However, only a month after their retirement, on July 27, 1998, Schlumberger announced a new voluntary early retirement plan, or "VERP," that provided an additional year of salary not included in the old VERP under which the plaintiffs retired. Because they had terminated their employment with Schlumberger prior to July 27, 1998, they were ineligible for the additional benefits of the new VERP.

The plaintiffs sued Schlumberger in Texas state court for fraud, fraudulent inducement, negligence, and gross negligence, alleging that Schlumberger had falsely told each of them that no new VERP was under consideration before they separately elected to take early retirement. Schlumberger removed the suit to federal court and then moved for summary judgment, arguing that ERISA preempted the plaintiffs' claims. The plaintiffs conceded that ERISA preempted their state law causes of action, but argued that the court should construe their claims as alleging breach of fiduciary duty under ERISA.

**\*410** Considering the suit as one for breach of fiduciary duty, the trial court reasoned that a company need not truthfully disclose the fact that it is considering adopting a plan change unless it is "seriously considering" such a change. This does not occur until three criteria are present: There is (1) a specific proposal (2) that is being discussed for purposes of implementation (3) by senior management with the authority to implement the change. The district court concluded that Schlumberger did not begin seriously considering the plan change until a few weeks after the last of the plaintiffs had inquired about a possible change, and granted summary judgment in Schlumberger's favor. [FN3] The plaintiffs have timely appealed.

FN3. The evidence presented along with Schlumberger's summary judgment motion reveals that on May 13, 1998, apparently at Schlumberger's request, the Segal Company sent Margaret Bailey, manager of benefit plan compliance at Schlumberger, a letter informing her of "the features and challenges" of using an early retirement incentive program. It described the most common types of these programs, legal implications of utilizing such programs, and factors that are generally considered in estimating the cost of such programs. The letter also informed Bailey that Segal "ha[d] begun preparing costs" for several different types of programs "for each company in the oilfield group" of Schlumberger.
The following week, on May 21, 1998, Segal addressed another letter to Bailey

Case 3:02-cv-00277-JCH    Document 56-3    Filed 11/03/2003    Page 9 of 15

338 F.3d 407                                                                                                          Page 4
30 Employee Benefits Cas. 2249, Pens. Plan Guide (CCH) P 23984O
(Cite as: 338 F.3d 407, 2003 WL 21557397 (5th Cir.(Tex.)))

providing the estimated expense for four different types of program designs. Five days later, on May 26, 1998, Segal sent Bailey another letter supplementing the May 21 letter. It calculated costs for two additional types of programs.

On that same day, Bailey sent an e-mail to Pierre Bismuth, vice president of personnel, in which she attached the financial calculations for these two additional options, along with an estimation of the number of employees eligible for these programs. Bismuth immediately wrote back, stating, "I will certainly go with the least aggressive option as the number[s] are high and the cost not [i]nsignificant ... [T]he aggressive options ... are too costly and not interesting.... [A]gain the cost makes me have second thoughts[.]" On June 6, 1998, Bailey sent Bismuth additional calculations, this time for four different early retirement scenarios.

On June 5, 1998, Art Alexander, senior advisor to Bismuth, sent an e-mail to Ken Rohner, director of personnel, explaining, "I know that we have used [S]egal to do the calculations involved in [early retirement program] considerations but there is doubtless another area of outside expertise that we should seek BEFORE a decision is made to proceed. That is ERISA legal support since the area of obtaining ADEA (age discrimination) releases in [early retirement] Window circumstances is very tricky, relates to the amount of consideration being provided people and is influenced by court decisions and precedents." He advised Rohner of the attorney he should call regarding these matters and added, "I don't know that he has yet been in the loop but I would think he should be pretty soon."

On June 7, 1998, Bismuth wrote to Rohner, Alexander, and Bailey, "please make sure that [A]rt comes fully prepared in [P]aris to talk about it," and asked about "cost estimation" and additional "proposed incentives" for certain people he hoped to target with the program. On July 14, 1998, Rohner, Bailey, Schlumberger Oilfield Services president Rex Ross, inside counsel John Symington, and other executives met at Sugar Land, Texas, and agreed upon a proposed plan that they then forwarded to other executives in the company, including Bismuth. On July 27, 1998, Schlumberger made the VERP announcement to its employees.

When deposed, Bailey testified that "[n]either a final VERP plan nor a final recommendation was completed for presentation to upper management until July 14, 1998" at the Sugar Land meeting. "At this meeting, a more specific plan was then formalized and approved by those in attendance and forwarded to Pierre Bismuth for final approval." She confirmed that "[o]nly the combined approval of" Bismuth and Ross "was sufficient to approve such a plan and result in its recommendation to the board of directors."

II.

**2 We review a grant of summary judgment *de novo,* applying the same standards *411 as the district court. [FN4] Summary judgment may be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. [FN5] The moving party bears the burden of identifying an absence of evidence to support the nonmoving party's case. [FN6] In determining whether summary judgment is appropriate, we must view all of the evidence introduced and all of the factual inferences from the evidence in a light most favorable to the party opposing the motion, and resolve all reasonable doubts about the facts in favor of the nonmoving party. [FN7]

FN4. *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.,* 310 F.3d 870, 877 (5th Cir.2002).

FN5. *Id.;* Fed.R.Civ.P. 56(c).

FN6. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

FN7. *Terrebonne Parish Sch. Bd.,* 310 F.3d at 877.

III.
A.

It is well-known that Congress enacted ERISA to

Case 3:02-cv-00277-JCH  Document 56-3  Filed 11/03/2003  Page 10 of 15

338 F.3d 407 Page 5
30 Employee Benefits Cas. 2249, Pens. Plan Guide (CCH) P 23984O
(Cite as: 338 F.3d 407, 2003 WL 21557397 (5th Cir.(Tex.)))

protect employees' rights to benefits while also encouraging employers to develop employee benefits programs. [FN8] To that end, ERISA provides a "broad federal regulatory scheme governing the operation of privately sponsored employee benefit plans." [FN9] Its fiduciary duty and reporting and disclosure requirements are crucial components of this scheme. [FN10] In regard to reporting and disclosure, ERISA provides specific rules governing the information that must be provided to participants and beneficiaries as well as to certain government agencies. [FN11]

> FN8. Melissa Elaine Stover, Note, *Maintaining ERISA's Balance: The Fundamental Business Decision v. the Affirmative Fiduciary Duty to Disclose Proposed Changes*, 58 WASH. & LEE L. REV. 689, 690 (2001) (citing 263 CONG. REC. S15,762 (1974)).

> FN9. Edward E. Bintz, *Fiduciary Responsibility Under ERISA: Is There Ever a Fiduciary Duty to Disclose?*, 54 U. PITT. L. REV. 979, 979 (1993).

> FN10. *Id.* at 980; see 29 U.S.C. §§ 1104-05, 1021-31.

> FN11. Bintz, *supra* note 9, at 980.

The summary plan description is one of the central ERISA disclosure requirements. [FN12] A plan administrator must provide a summary plan description to an individual within ninety days of his or her becoming a participant. [FN13] The description must be written in a manner "calculated to be understood by the average plan participant" and must be "sufficiently comprehensive to apprise the plan's participants and beneficiaries of their rights and obligations under the plan." [FN14] ERISA also mandates that administrators provide a summary description of any material plan modification within 210 days after the end of the plan year in which the change was adopted. [FN15]

> FN12. *Id.* at 981.

> FN13. *Id.*; 29 U.S.C. § 1024(b)(1); 29 C.F.R. § 2520.104-4(b)(1).

> FN14. 29 C.F.R. § 2520.102-2.

> FN15. 29 U.S.C. § 1024(b)(1)(B).

[1] Apart from the ERISA disclosure rules plan administrators are also subject to fiduciary duties. [FN16] Section 404(a)(1) of ERISA incorporates strict standards of trustee conduct, derived from the common law of trusts, including a standard of loyalty and a standard of care:

> FN16. 29 U.S.C. § 1104(a)(1).

Under the former, a plan fiduciary "shall discharge his duties with respect to a plan solely in the interest of the participants *412 and beneficiaries and ... for the exclusive purpose of providing benefits to participants and their beneficiaries ... and ... defraying reasonable expenses of administering the plan." Under the latter, a fiduciary "shall discharge his duties with respect to a plan ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." [FN17]

> FN17. *Cent. States, S.E. & S.W. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570-71, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985) (quoting § 1104(a)(1)).

Other than including these general dictates, ERISA does not expressly enumerate the particular duties of a fiduciary, but rather "relies on the common law of trusts to define the general scope of a fiduciary's responsibilities." [FN18] As a result, "[t]he express language of ERISA provides little indication as to whether there is ever a fiduciary duty to disclose information to participants and beneficiaries," and "[n]either ERISA's fiduciary duty nor reporting and disclosure rules directly address the relationship between" one another. [FN19]

> FN18. Bintz, *supra* note 9, at 985.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Case 3:02-cv-00277-JCH    Document 56-3    Filed 11/03/2003    Page 11 of 15

338 F.3d 407                                                                                                    Page 6
30 Employee Benefits Cas. 2249, Pens. Plan Guide (CCH) P 239840
(Cite as: 338 F.3d 407, 2003 WL 21557397 (5th Cir.(Tex.)))

FN19. *Id.* at 988.

[2] Although trust principles impose a duty of disclosure upon an ERISA fiduciary when there are " 'material facts affecting the interest of the beneficiary which [the fiduciary] knows the beneficiary does not know' " but " 'needs to know for his protection,' " [FN20] this does not answer the question whether an employer-administrator has a duty to disclose *potential*, as opposed to *current*, benefit plan provisions. The question is complicated by the fact that ERISA allows an employer to act as a plan administrator, leaving open the potential that the employer could be subject to conflicting loyalties in such a situation: "A loyalty to do what is in the best interest of the company, and a fiduciary duty of loyalty to do what is in the best interest of the [participants and beneficiaries]." [FN21] As the Supreme Court has noted, although a traditional trustee "is not permitted to place himself in a position where it would be for his own benefit to violate his duty to the beneficiaries[, u]nder ERISA ... a fiduciary may have financial interests adverse to beneficiaries." [FN22] Thus, employers "can be ERISA fiduciaries and still take actions to the disadvantage of employee beneficiaries, when they act as employers (*e.g.*, firing a beneficiary for reasons unrelated to the ERISA plan), or even as plan sponsors (*e.g.*, modifying the terms of a plan as allowed by ERISA to provide less generous benefits)." [FN23]

FN20. *Id.* at 985 (quoting Restatement (Second) of Trusts § 173 cmt. d (1959)).

FN21. Stover, *supra* note 8, at 690.

FN22. *Pegram v. Herdrich*, 530 U.S. 211, 225, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000) (internal quotation marks and citation omitted).

FN23. *Id.*

**3 [3] To assist in resolving this potential conflict, the Supreme Court created the "two hats" doctrine, which acknowledges that the employer is subject to fiduciary duties under ERISA only "to the extent" that it performs three specific functions identified by Congress: [FN24] (i) exercising "any discretionary authority or discretionary control respecting management of [a benefits] plan or exercis[ing] any authority or control respecting management or disposition *413 of its assets"; (ii) rendering "investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan," or having "any authority or responsibility to do so"; or (iii) having "any discretionary authority or discretionary responsibility in the administration of" the plan. [FN25] Therefore, in suits charging breach of fiduciary duty under ERISA, "the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." [FN26]

FN24. Stover, *supra* note 8, at 698 n. 44, 714-19.

FN25. 29 U.S.C. § 1002(21)(A).

FN26. *Pegram*, 530 U.S. at 226, 120 S.Ct. 2143.

B.

[4] "A plan participant may bring suit for breach of fiduciary duty to obtain 'appropriate equitable relief' to redress violations of ERISA." [FN27] Although we have not yet addressed whether ERISA imposes a fiduciary duty upon an employer to truthfully disclose, upon inquiry, its consideration of a benefit plan change, [FN28] most of our sister circuits have, these decisions together creating what one commentator has characterized as a "continuum of disarray." [FN29] Before visiting these decisions, however, we note that the Supreme Court, while not having spoken on this precise question, has defined in general terms an employer's responsibility to communicate truthfully with its employees regarding the future of benefit plans.

FN27. *McCall v. Burlington N./Santa Fe Co.*, 237 F.3d 506, 510 (5th Cir.2000).

Case 3:02-cv-00277-JCH   Document 56-3   Filed 11/03/2003   Page 12 of 15

338 F.3d 407                                                                                                Page 7
30 Employee Benefits Cas. 2249, Pens. Plan Guide (CCH) P 239840
(Cite as: 338 F.3d 407, 2003 WL 21557397 (5th Cir.(Tex.)))

FN28. *McCall* presented us with the question, but we declined to address it in that case because the plan change at issue was not conceived until several years after the plaintiffs decided to retire. *Id.* at 511 n. 2 ("The Fifth Circuit has not yet set out the boundaries of a fiduciary's legal obligation to truthfully inform employees about possible future employee benefit plans. Seven of our sister circuits have held that there is no breach of fiduciary duty in failing to inform beneficiaries about a future plan until and unless that plan is under 'serious consideration.' The Second Circuit, on the other hand, declined to treat serious consideration as a 'talismanic' indicator, but listed it as one factor in the materiality inquiry.... Finding the question not properly presented, we decline the parties' invitation to adopt or reject the 'serious consideration' test for the Fifth Circuit." (internal citations omitted)).

FN29. Daniel M. Nimtz, *ERISA Plan Changes*, 75 DENV. U.L. REV. 891, 894 (1998).

In *Varity Corp. v. Howe,* plaintiffs, past employees of Varity's subsidiary, Massey-Ferguson Inc., complained that Varity had affirmatively misrepresented to them that their benefits would remain secure if they transferred to a new subsidiary, Massey Combines. [FN30] Before their transfer, the plaintiffs participated in Massey-Ferguson's self-funded employee welfare benefit plan, an ERISA-protected plan. [FN31] Varity, Massey-Ferguson's parent company, became concerned that Massey-Ferguson was losing too much money and developed a business plan to deal with the problem. [FN32] The plan called for "a transfer of Massey-Ferguson's money-losing divisions, along with various other debts, to a newly created, separately incorporated subsidiary called Massey Combines." [FN33] The plan contemplated that Massey Combines would fail, but viewed this probable occurrence *414 in a favorable light, because the failure "would not only eliminate several of Varity's poorly performing divisions, but ... would also eradicate various debts that Varity would transfer to Massey Combines, and which, in the absence of the reorganization, Varity's more profitable subsidiaries or divisions might have to pay." [FN34]

FN30. 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996).

FN31. *Id.* at 492, 116 S.Ct. 1065.

FN32. *Id.* at 492-93, 116 S.Ct. 1065.

FN33. *Id.* at 493, 116 S.Ct. 1065.

FN34. *Id.*

**4 One of the obligations Varity desired to eliminate was the Massey-Ferguson benefit plan's promises to pay the medical and other nonpension benefits to employees of Massey-Ferguson's money-losing divisions. [FN35] To accomplish this goal Varity held a special meeting with employees of the failing divisions in an attempt to convince them to switch over to Massey Combines. [FN36] At the meeting Varity promised that "the employees' benefits would remain secure" if they transferred to Combines, even though "Varity knew ... the reality was very different." [FN37] Approximately 1500 Massey-Ferguson employees accepted Varity's assurances and transferred to Combines; by the end of Combines' second year the company was in receivership, and the employees lost their nonpension benefits. [FN38]

FN35. *Id.*

FN36. *Id.* at 494, 116 S.Ct. 1065.

FN37. *Id.*

FN38. *Id.*

In determining whether Varity had breached any fiduciary duty owed the plaintiffs, the Supreme Court first recognized that ERISA protects employee benefit plans by setting forth certain fiduciary duties applicable to their management. [FN39] Although

Case 3:02-cv-00277-JCH     Document 56-3     Filed 11/03/2003     Page 13 of 15

338 F.3d 407                                                                                                Page 8
30 Employee Benefits Cas. 2249, Pens. Plan Guide (CCH) P 23984O
(Cite as: 338 F.3d 407, 2003 WL 21557397 (5th Cir.(Tex.)))

these duties find their basis in the common law of trusts, [FN40] the Court cautioned that ERISA's standards and procedural protections "partly reflect a congressional determination that the common law of trusts did not offer completely satisfactory protection." [FN41] In some instances "trust law will offer only a starting point, after which courts must go on to ask whether, or to what extent, the language of the statute, its structure, or its purposes require departing from common-law trust requirements." [FN42] In so doing, courts should take account of competing congressional purposes, "such as Congress'[s] desire to offer employees enhanced protection for their benefits, on the one hand, and, on the other, its desire not to create a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefit plans in the first place." [FN43]

> FN39. *Id.* at 496, 116 S.Ct. 1065.

> FN40. *Id.*

> FN41. *Id.* at 497, 116 S.Ct. 1065.

> FN42. *Id.*

> FN43. *Id.*

In terms of an employer's fiduciary status, the Court found that ERISA raises an employer to the status of fiduciary " 'to the extent' " that it " 'exercises any discretionary authority or discretionary control respecting management' " of the plan, or has " 'any discretionary authority or discretionary responsibility in the administration' " of the plan. [FN44] Varity argued that "when it communicated with its Massey-Ferguson workers about transferring to Massey Combines, it was not administering or managing the plan; rather, it was acting only in its capacity as an *employer* *415 and not as a *plan administrator*." [FN45] The Court disagreed, finding that the purpose of the meeting convened by Varity was to convey that transferring to Combines "would not significantly undermine the security of their benefits" and therefore Varity was acting "in its capacity as plan administrator." [FN46]

> FN44. *Id.* at 498, 116 S.Ct. 1065 (quoting 29 U.S.C. § 1002(21)(A)) (internal quotation marks omitted).

> FN45. *Id.*

> FN46. *Id.* at 501, 116 S.Ct. 1065.

**\*5** In making this determination the Court explained that "we must interpret the statutory terms which limit the scope of fiduciary activity to discretionary acts of plan 'management' and 'administration.' " [FN47] It then reasoned that

> FN47. *Id.* at 502, 116 S.Ct. 1065.

[t]he ordinary trust law understanding of fiduciary "administration" of a trust is that to act as an administrator is to perform the duties imposed, or exercise the powers conferred, by the trust documents. The law of trusts also understands a trust document to implicitly confer such powers as are necessary or appropriate for the carrying out of the purposes of the trust. [FN48]

> FN48. *Id.* (internal quotation marks omitted).

It concluded, "[c]onveying information about the likely future of plan benefits, thereby permitting beneficiaries to make an informed choice about continued participation, would seem to be an exercise of a power 'appropriate' to carrying out an important plan purpose." [FN49]

> FN49. *Id.*

The Court emphasized that in convening the meeting and providing the employees with reassurances about the security of their future benefits, "Varity was exercising 'discretionary authority' respecting the plan's 'management' or 'administration' when it made these misrepresentations." [FN50] Varity argued that "neither the specific disclosure provisions of ERISA, nor the specific terms of the plan instruments *required* it to make these statements," so it could not have taken on a fiduciary status in making them.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Case 3:02-cv-00277-JCH    Document 56-3    Filed 11/03/2003    Page 14 of 15

338 F.3d 407                                                                                                              Page 9
30 Employee Benefits Cas. 2249, Pens. Plan Guide (CCH) P 239840
(Cite as: 338 F.3d 407, 2003 WL 21557397 (5th Cir.(Tex.)))

[FN51] However, the Court explained that the fiduciary duty primarily functioned "to constrain the exercise of *discretionary* powers which are controlled by no other specific duty imposed by the trust instrument or the legal regime. If the fiduciary duty applied to nothing more than activities already controlled by other specific legal duties, it would serve no purpose." [FN52]

FN50. *Id.* at 498, 116 S.Ct. 1065.

FN51. *Id.* at 504, 116 S.Ct. 1065.

FN52. *Id.*

After concluding that Varity acted as a fiduciary during the meeting with prospective Combines employees, the Court determined that the company breached its fiduciary duty by affirmatively misleading the employees about the future of their benefits if they were to transfer. [FN53] It explained that ERISA requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." [FN54] It then reasoned, "[t]o participate knowingly and significantly in deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense is not to act solely in the interest of the participants and beneficiaries.... [L]ying is inconsistent with the duty of loyalty owed by all fiduciaries...." [FN55] The *Varity* Court concluded, "we can find no adequate basis ... for any *416 special interpretation [of ERISA's fiduciary duty] that might insulate Varity, acting as a fiduciary, from the legal consequences of the kind of conduct (intentional misrepresentation) that often creates liability even among strangers." [FN56]

FN53. *Id.* at 506, 116 S.Ct. 1065.

FN54. *Id.* (internal quotation marks omitted).

FN55. *Id.* (internal quotation marks omitted).

FN56. *Id.*

[5] Although the *Varity* Court explicitly declined to take up "whether ERISA fiduciaries have any fiduciary duty to disclose truthful information ... in response to employee inquiries," [FN57] its reasoning does provide insight. Important for our purposes is the acknowledgment that ERISA's disclosure requirements do not themselves mandate that an employer disclose information regarding the future of a benefit plan. Indeed, the Court characterized this act as "discretionary." Justice Thomas, writing for the dissenters, similarly reminded that ERISA "impose[s] a comprehensive set of reporting and disclosure requirements, which is part of an elaborate scheme ... for enabling beneficiaries to learn their rights and obligations at any time." [FN58] However, "no provision of ERISA requires an employer to keep plan participants abreast of ... the sponsor's future intentions with regard to terminating or reducing the level of benefits." [FN59]

FN57. *Id.*

FN58. *Id.* at 531, 116 S.Ct. 1065 (Thomas, J., dissenting) (internal quotation marks omitted).

FN59. *Id.* at 531-32, 116 S.Ct. 1065.

**6 [6] Of equal importance is the majority's view that even if disclosure of a plan's future is discretionary, once an employer chooses to exercise its discretionary authority by informing the employees of the future status of a benefit plan, it acts as a fiduciary and thus has a duty not to misrepresent the truth, which would be inconsistent with the duty to act "solely in the interests of the participants and beneficiaries."

C.

The earliest court of appeals case addressing the fiduciary obligations of an employer considering implementing an enhanced benefits plan is *Berlin v. Michigan Bell Telephone Co.,* a 1988 case from the Sixth Circuit. [FN60] Michigan Bell offered a retirement incentive program, and then a more generous second plan. During the first offering, the company attempted to dispel rumors that it planned

Case 3:02-cv-00277-JCH    Document 56-3    Filed 11/03/2003    Page 15 of 15

338 F.3d 407                                                                                                  Page 10
30 Employee Benefits Cas. 2249, Pens. Plan Guide (CCH) P 239840
(Cite as: 338 F.3d 407, 2003 WL 21557397 (5th Cir.(Tex.)))

to offer a second, enhanced program if not enough employees accepted the first time around. To that end it indicated that the first offering was a "one-time application, that [enhanced] benefits would not again be made available, and that managers considering retirement should not delay plans in anticipation of another [early retirement] offering." [FN61] Plaintiffs, who accepted the first offering, contended that the company intentionally misrepresented the possibility of a second, more beneficial program. [FN62]

FN60. 858 F.2d 1154, 1164 (6th Cir.1988).

FN61. *Id.* at 1158.

FN62. *Id.*

In determining whether the company violated any fiduciary duty in making the misleading statements, the court first acknowledged that several courts have "held that misleading communications to plan participants regarding plan administration," for instance, "eligibility under a plan" or "the extent of benefits under a plan," may "support a claim for breach of fiduciary duty." [FN63] It distilled these holdings into the principle that "a fiduciary may not materially mislead those to whom **417** the duties of loyalty and prudence [under ERISA] are owed." [FN64]

FN63. *Id.* at 1163.

FN64. *Id.*

Based on this conclusion the *Berlin* court reasoned that "when serious consideration was given by" the company to implementing the second offering, the plan administrator "had a fiduciary duty not to make misrepresentations, either negligently or intentionally, to potential plan participants concerning the second offering." [FN65] Consequently, "any misrepresentations made to the potential plan participants after serious consideration was given to a second offering could constitute a breach of a fiduciary duty." [FN66] It dismissed the company's defense, that it could not have made misrepresentations prior to its final decision to offer the enhanced benefits because "any pre-decision communications [could] be nothing more than predictions," by concluding that "this distinction goes to materiality rather than to the definition of 'misrepresentation.'" [FN67] It reasoned that if, for example, the company, "after *serious consideration* " of a second benefits offering began, represented that the enhanced plan was not being considered, such a statement "would be characterized as a material misrepresentation, although no final decision had been made." [FN68]

FN65. *Id.* at 1163-64.

FN66. *Id.* at 1164.

FN67. *Id.* at 1164 n. 7.

FN68. *Id.*

In finding that the company could be liable for breach of fiduciary duty because of its alleged misrepresentations, the *Berlin* court limited its ruling to those instances in which employers are accused of affirmatively misrepresenting the possibility of future benefits:

**7 [P]laintiffs are not arguing, nor do we hold, that defendants had any duties ... to say anything at all or to communicate with potential plan participants about the future availability of [enhanced retirement benefits programs].... But if the plan administrator and/or plan fiduciary does communicate with potential plan participants *after serious consideration* has been given concerning a future implementation or offering under the plan, then any material misrepresentations may constitute a breach of their fiduciary duties. [FN69]

FN69. *Id.* at 1164.

*Berlin* thus carved out a limited duty on the part of employers to avoid misrepresentations about the availability of future incentive programs *if* they choose to broach the subject of prospective plans. It did not hold that the employer had an affirmative duty to communicate any information about future plans to its employees, either before or after it gave serious consideration to those potential programs.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works