Case 3:02-cv-00277-JCH   Document 56-4   Filed 11/03/2003   Page 1 of 9

338 F.3d 407                                                                                                Page 11
30 Employee Benefits Cas. 2249, Pens. Plan Guide (CCH) P 23984O
(Cite as: 338 F.3d 407, 2003 WL 21557397 (5th Cir.(Tex.)))

Although reasoning that an employer could be liable for misrepresentations after the point at which it began seriously considering a plan change, the court provided no definition for the term nor an explanation for its drawing the line at the point of "serious consideration" rather than at another point during the process of adopting a plan change. [FN70]

> FN70. Several other circuit courts followed *Berlin* in finding that an employer may not affirmatively misrepresent potential benefits. *See, e.g., Maez v. Mountain States Telephone & Telegraph, Inc.,* 54 F.3d 1488, 1501 (10th Cir.1995); *Mullins v. Pfizer, Inc.,* 23 F.3d 663, 668-69 (2d Cir.1994); *Vartanian v. Monsanto Co. (Vartanian I),* 14 F.3d 697, 702 (1st Cir.1994); *Barnes v. Lacy,* 927 F.2d 539, 544 (11th Cir.1991).

*418 The Sixth Circuit expanded upon *Berlin* three years later in *Drennan v. General Motors Corp.*, in which it held that the duty to avoid material representations about a future plan requires that an employer also "fairly disclose[ ] the progress of its serious considerations to make a plan available to affected employees." [FN71] It transformed *Berlin*'s prohibition against misrepresentation into an affirmative duty of truthful disclosure:

> FN71. 977 F.2d 246, 251 (6th Cir.1992).

A fiduciary "has a duty not only to inform a beneficiary of new and relevant information as it arises, but also to advise him of circumstances that threaten interests relevant to the relationship." A fiduciary must give complete and accurate information in response to participants' questions, a duty that does not require the fiduciary to disclose its internal deliberations nor interfere with the substantive aspects of the [collective] bargaining process. [FN72]

> FN72. *Id.* at 251 (quoting *Eddy v. Colonial Life Ins. Co.,* 919 F.2d 747, 750 (D.C.Cir.1990)). Although the statement *Drennan* lifts from *Eddy* appears to support *Drennan*'s proposition that an employer must disclose potential plan changes that might affect the future of a participant's benefits, *Eddy* actually concerned an entirely different set of circumstances. In that case the plaintiff, a participant in his employer's group health insurance policy who suffered from AIDS, received notice that after a certain date his group coverage would terminate. 919 F.2d at 748. The district court concluded that when Eddy called the insurance company to attempt to prolong his health coverage, he asked whether it could be "continued" rather than whether it could be "converted." The insurance representative told him it could not be continued. *Id.* at 748-49. The district court found that the insurance company breached no duty to Eddy because it had truthfully informed him that his coverage could not be continued. *Id.* at 749. The circuit court reversed, finding that the insurance provider's duty encompassed more than simply informing Eddy that his coverage could not be continued, but also explaining to him that his group policy could be converted into an individual one. *Id.* at 750-52. Thus, the case concerned an insurer's responsibility to communicate fully a beneficiary's rights under his current insurance coverage. It did not speak to whether an employer-administrator has a duty to fully disclose the status of its consideration of future plan amendments.

As one commentator has noted, *Drennan*'s statements are "somewhat contradictory," and reconciled they appear to require a fiduciary to disclose the fact that changes to a plan are under consideration "but not the details of the decision-making process." [FN73]

> FN73. Bintz, *supra* note 9, at 995.

Although *Drennan* added to the holding of *Berlin* by insisting upon an affirmative duty on the part of an employer, *Wilson v. Southwestern Bell Telephone Co.,* an Eighth Circuit case released after *Drennan*, adhered to *Berlin*'s more restrictive definition of an employer's duty to its employees with respect to a potential plan change. [FN74] The *Wilson* panel explained that while "[p]lan fiduciaries are *not* obligated under ERISA to provide information to potential plan beneficiaries about possible future offerings," if a fiduciary does choose to "provide such information about the future ... it has a duty not to make misrepresentations about any future offering." [FN75] For instance, "[a] statement to

employees that future incentive programs are not planned can be a misrepresentation if serious consideration has been given to implementing a future program." [FN76]

FN74. 55 F.3d 399, 405 (8th Cir.1995).

FN75. *Id.* (citing *Berlin,* 858 F.2d at 1164) (emphasis added).

FN76. *Id.*

Although the Eighth Circuit preferred to adhere to *Berlin,* the Third Circuit *419 took its cues from *Drennan,* holding that an employer has both a negative duty to refrain from disseminating incorrect information with regard to potential plans under serious consideration, and an affirmative responsibility to disclose, upon an employee's request, the terms of such a plan if it is under serious consideration. [FN77] That court further created a three-part test for discerning whether a potential plan is under serious consideration. [FN78] These developments occurred in two decisions in the same case, *Fischer v. Philadelphia Electric Co.* [FN79] The plaintiffs, past employees of Philadelphia Electric, had retired soon before the utility had implemented an early retirement incentive program. [FN80] Prior to their retirement, the plaintiffs had inquired of the company whether it would be pursuing such a program but benefits counselors had told them that no new plan was being considered. [FN81] They filed suit alleging that the utility had breached its fiduciary obligation to reveal to them when asked that it had been considering an early retirement incentive program. [FN82]

FN77. *Fischer v. Phila. Elec. Co. (Fischer II),* 96 F.3d 1533 (3d Cir.1996); *Fischer v. Phila. Elec. Co. (Fischer I ),* 994 F.2d 130 (3d Cir.1993).

FN78. *Fischer II,* 96 F.3d at 1539.

FN79. *Fischer II,* 96 F.3d 1533; *Fischer I,* 994 F.2d 130.

FN80. *Fischer I,* 994 F.2d at 132.

FN81. *Id.*

FN82. *Id.*

**\*\*8** The district court granted summary judgment in the utility's favor and the plaintiffs appealed. [FN83] The Third Circuit issued its first decision, known as *Fischer I,* relying on *Drennan* for guidance. [FN84] It concluded that although an ERISA fiduciary "is under no obligation to offer precise predictions about future changes to its plan," it "may not make affirmative material misrepresentations" and must "answer participants' questions forthrightly." [FN85] Perpetuating the internal contradiction first established in *Drennan,* it added that this duty of disclosure does not, however, "require the fiduciary to disclose its internal deliberations nor interfere with the substantive aspects of the [collective] bargaining process." [FN86]

FN83. *Id.*

FN84. *Id.* at 135.

FN85. *Id.*

FN86. *Id.* (internal quotation marks omitted).

It also expanded upon *Drennan* by defining the term "material misrepresentation," reasoning that "a misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision about if and when to retire." [FN87] It continued:

FN87. *Id.*

Included within the overall materiality inquiry will be an inquiry into the seriousness with which a particular change to an employee pension plan is being considered at the time the misrepresentation is made. All else equal, the more seriously a plan change is being considered, the more likely a

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Case 3:02-cv-00277-JCH   Document 56-4   Filed 11/03/2003   Page 3 of 9

338 F.3d 407                                                                                                                              Page 13
30 Employee Benefits Cas. 2249, Pens. Plan Guide (CCH) P 23984O
(Cite as: 338 F.3d 407, 2003 WL 21557397 (5th Cir.(Tex.)))

misrepresentation, e.g., that no change is under consideration, will pass the threshold of materiality. [FN88]

FN88. *Id.*

The court remanded the case on the basis that fact questions remained on the issue of how seriously the defendant was considering the early retirement program when the plaintiffs made the various inquiries *420 that elicited the alleged misrepresentations. [FN89]

FN89. *Id.*

In *Fischer II* the Third Circuit had a second chance to speak on the serious consideration issue. [FN90] After the circuit court's remand in *Fischer I,* the district court had determined that the defendants were liable to those plaintiffs who had inquired about the possibility of a new plan between the time the utility's manager of compensation and benefits started exploring the idea of an early retirement plan--the point at which "serious consideration" began--and the date on which the plan was announced. [FN91] The defendants appealed and the Third Circuit reversed, explaining that the district court had "misunderstood the concept of 'serious consideration.' " [FN92]

FN90. 96 F.3d 1533 (3d Cir.1996).

FN91. *Id.* at 1536-38.

FN92. *Id.* at 1536.

**9 It explained, "[i]n the current case, as in any case where the misrepresentation in question is the statement that no change in benefits is under consideration, the only factor at issue is the degree of seriousness with which the change was in fact being considered. This factor controls the materiality test." [FN93] Supplying a belated justification for *Fischer I* 's use of *Drennan* 's "serious consideration" standard, the *Fischer II* panel opined:

FN93. *Id.* at 1538.

The concept of "serious consideration" recognizes and moderates the tension between an employee's right to information and an employer's need to operate on a day-to-day basis. Every business must develop strategies, gather information, evaluate options, and make decisions. Full disclosure of each step in this process is a practical impossibility. Moreover ... large corporations regularly review their benefits packages as part of an on-going process of cost-monitoring and personnel management. The various levels of management are constantly considering changes in corporate benefits plans. A corporation could not function if ERISA required complete disclosure of every facet of these on-going activities. Consequently, our holding in *Fischer I* requires disclosure only when a change in benefits comes under *serious* consideration.

Equally importantly, serious consideration protects employees. Every employee has a need for material information on which that employee can rely in making employment decisions. Too low a standard could result in an avalanche of notices and disclosures. For employees at a company ... which regularly reviews its benefits plans, truly material information could easily be missed if the flow of information was too great. The warning that a change in benefits was under serious consideration would become meaningless if cried too often. [FN94]

FN94. *Id.* at 1539.

Attempting to transform the nebulous concept of "serious consideration" into a standard courts could actually apply, the *Fischer II* court created a three-factor test: "Serious consideration of a change in plan benefits exists when (1) a specific proposal (2) is being discussed for purposes of implementation (3) by senior management with authority to implement the change." [FN95] These criteria "interact and coalesce to form a composite picture of serious consideration." [FN96]

FN95. *Id.*

FN96. *Id.*

*421 The court explained that the first factor "distinguishes serious consideration from the

Case 3:02-cv-00277-JCH    Document 56-4    Filed 11/03/2003    Page 4 of 9

338 F.3d 407 Page 14
30 Employee Benefits Cas. 2249, Pens. Plan Guide (CCH) P 23984O
(Cite as: 338 F.3d 407, 2003 WL 21557397 (5th Cir.(Tex.)))

antecedent steps of gathering information, developing strategies, and analyzing options." [FN97] This factor does not require, however, that the proposal describe the plan in its final form. [FN98] Rather, "a specific proposal can contain several alternatives, and the plan as finally implemented may differ somewhat from the proposal," as long as the proposal is "sufficiently concrete to support consideration by senior management for the purpose of implementation." [FN99]

FN97. *Id.* at 1539-40.

FN98. *Id.* at 1540.

FN99. *Id.*

**10 The second element, discussion for implementation, "distinguishes serious consideration from the preliminary steps of gathering data and formulating strategy," and "protects the ability of senior management to take a role in the early phases of the process without automatically triggering a duty of disclosure." [FN100] The final criterion, consideration by senior management with authority to implement the change, "ensures that the analysis of serious consideration focuses on the proper actors within the corporate hierarchy." [FN101] In other words, until senior management with "authority to implement the proposed change" enters into the picture, "the company has not yet seriously considered a change." [FN102]

FN100. *Id.*

FN101. *Id.*

FN102. *Id.*

The *Fischer II* court reasoned that this formulation ensures that disclosures to employees about potential changes in benefits will be meaningful. Employees will learn of potential changes when the company's deliberations have reached a level where an employee should reasonably factor the potential change into an employment decision. This guarantees that employees will have the information they need, while avoiding a surfeit of meaningless disclosures. Finally, as a matter of policy, we note that imposing liability too quickly for failure to disclose a potential early retirement plan could harm employees by deterring [employers] from resorting to such plans. [FN103]

FN103. *Id.* at 1541.

Only two months after the Third Circuit released *Fischer II,* the Sixth Circuit established its own standard for determining serious consideration. In *Muse v. International Business Machines Corp.,* [FN104] that court reasoned that "[t]he exception of serious consideration does not apply until a company focuses on a particular plan for a particular purpose." [FN105] Despite *Muse* 's omission of any mention of *Fischer II* or the Third Circuit's three-pronged test, in a later case, *McAuley v. International Business Machines Corp.,* the Sixth Circuit decided to merge its "particular plan for a particular purpose" standard with *Fischer II* 's three-part serious consideration test. [FN106]

FN104. 103 F.3d 490 (6th Cir.1996).

FN105. *Id.*

FN106. *McAuley v. Int'l Bus. Machs. Corp.,* 165 F.3d 1038, 1043-45 (6th Cir.1999) ("[Under *Muse* ] [s]erious consideration does not occur until a company focuses on a particular plan for a particular purpose. The only further guidance *Muse* provides is to say that it is not serious consideration if an employer has only studied changes in plans to gain a general appreciation of its options.... [I]t is [also] useful to consider *Fischer II,* which delineated a relatively specific set of factors for determining serious consideration." (internal quotation marks and citations omitted)).

*422 The Tenth and First Circuits later incorporated *Fischer II* into their jurisprudence on an employer's fiduciary duties. In *Hockett v. Sun Co.,* the Tenth Circuit held that "material misrepresentations about a future plan offering do not constitute a breach of fiduciary duty unless the misrepresentations are made

Case 3:02-cv-00277-JCH   Document 56-4   Filed 11/03/2003   Page 5 of 9

338 F.3d 407                                                                                                    Page 15
30 Employee Benefits Cas. 2249, Pens. Plan Guide (CCH) P 239840
**(Cite as: 338 F.3d 407, 2003 WL 21557397 (5th Cir.(Tex.)))**

after the employer has 'seriously considered' the future offering.... '*Serious* consideration' marks the point ... at which imposing fiduciary-related duties will best serve the competing congressional purposes." [FN107] In its view, the *Fischer II* test "appropriately narrow[ed] the range of instances in which an employer must disclose, in response to employees' inquiries, its tentative intentions regarding an ERISA plan." [FN108] It repeated the concern that plagued the *Fischer II* panel: "If *any* discussion by management regarding possible change to an ERISA plan triggered disclosure duties, the employer could be burdened with providing a constant, ever-changing stream of information to inquisitive plan participants," [FN109] and would be forced to "impair the achievement of legitimate business goals by allowing competitors to know that the employer is considering a labor reduction, a site-change, a merger, or some other strategic move." [FN110] It also noted that, were fiduciaries required "to disclose such a business strategy, it would necessarily fail. Employees simply would not leave if they were informed that improved benefits were planned if workforce reductions were insufficient." [FN111]

FN107. *Hockett v. Sun Co.*, 109 F.3d 1515, 1522 (10th Cir.1997).

FN108. *Id.* at 1523.

FN109. *Id.*

FN110. *Id.* (internal quotation marks omitted).

FN111. *Id.* (internal quotation marks and citation omitted).

Similarly, in *Vartanian v. Monsanto Co.* (*Vartanian II*), the First Circuit used the *Fischer II* test to define the extent of an employer's fiduciary duty to disclose prospective plan changes. [FN112] It modified the standard by requiring that the specific proposal being discussed for purposes of implementation by senior management be applicable to "a person in the position of the plaintiff." [FN113] Despite its use of the serious consideration test *Vartanian II* expressed certain reservations about the standard, acknowledging that if confronted with a "positive misrepresentation" on the part of an employer, the misrepresentation might be material "regardless of whether future changes are under consideration at the time the misstatement is made." [FN114]

FN112. 131 F.3d 264, 268 (1st Cir.1997). *Vartanian II* also explained the evolution of case law on the issue of fiduciary duties prior to announcement of a new plan:
Early decisions grappling with the employer's duties in this context focused mainly on the extent of the cause of action engendered by an employer's material misrepresentations regarding prospective changes in plan benefits. As a consensus on that issue developed, attention began to shift to the question of when the consideration of a change in benefits reached a point of seriousness sufficient to trigger a fiduciary duty of disclosure.
*Id.* at 268-69 (citations omitted).

FN113. *Id.* at 272.

FN114. *Id.* at 269.

**11 The Second Circuit was the first to break from the serious consideration pack with *Ballone v. Eastman Kodak Co.*, holding that an employer could be liable for affirmatively misrepresenting the availability of a prospective retirement enhancement program regardless of whether the new plan was then under serious consideration.*423 [FN115] In *Ballone,* the employer-administrator had allegedly made affirmative assurances to its employees that it would not adopt an enhanced pension plan in the months following the plaintiffs' retirement. [FN116] The district court granted summary judgment in Kodak's favor, finding it irrelevant that Kodak had allegedly promised the plaintiffs that it had ruled out future plan changes because Kodak was not seriously considering such a plan change at the time it made the assurance. [FN117] The Second Circuit reversed, rejecting the *Fischer II* court's conclusion that misrepresentations about future benefits do not become material until the employer seriously considers benefits program changes. [FN118] Instead, the *Ballone* court reasoned that "[w]hether a plan is under serious consideration is but one factor in the materiality inquiry," and no bright-line rule

Case 3:02-cv-00277-JCH   Document 56-4   Filed 11/03/2003   Page 6 of 9

338 F.3d 407                                                                                              Page 16
30 Employee Benefits Cas. 2249, Pens. Plan Guide (CCH) P 239840
(Cite as: 338 F.3d 407, 2003 WL 21557397 (5th Cir.(Tex.)))

existed "that serious consideration of a future plan is a prerequisite to liability for misstatements regarding the availability of future pension benefits." [FN119] Rather, the court accepted "the simple view that when a plan administrator speaks, it must speak truthfully, regardless of how seriously any changes are being considered." [FN120]

FN115. 109 F.3d 117 (2d Cir.1997).

FN116. Id. at 120.

FN117. Id.

FN118. Id. at 122.

FN119. Id. at 123.

FN120. Id. (internal quotation marks omitted).

Applying its truthfulness standard to the facts at hand, *Ballone* concluded that "Kodak may not actively misinform its plan beneficiaries about the availability of future retirement benefits to induce them to retire earlier than they otherwise would, regardless of whether or not it is seriously considering future plan changes. Kodak has a duty to deal fairly and honestly with its beneficiaries." [FN121] It looked to securities law for guidance in defining the materiality standard applicable to these misrepresentations, finding that "an assurance about the future that by necessary implication misrepresents present facts is clearly actionable," [FN122] and such statements "are material if they would induce reasonable reliance." [FN123]

FN121. Id. at 124.

FN122. Id.

FN123. Id.

It expanded on this:

**12 Determining the materiality of false assurances like those here alleged is fact-specific and will turn on a number of factors, including[ ] how significantly the statement misrepresents the present status of internal deliberations regarding future plan changes; the special relationship of trust and confidence between the plan fiduciary and beneficiary; whether the employee was aware of other information or statements from the company tending to minimize the importance of the misrepresentation or should have been so aware, taking into consideration the broad trust responsibilities owed by the plan administrator to the employee and the employee's reliance on the plan administrator for truthful information; and the specificity of the assurance. Whereas mere mispredictions are not actionable, false statements about future benefits may be material if couched as a guarantee, especially where, as alleged here, the guarantee is supported by specific statements of fact. [FN124]

FN124. Id. at 125 (citations omitted).

*424 Although acknowledging that the extent to which a company is considering a new plan at the time it makes the alleged misrepresentation is relevant to its materiality, *Ballone* was unwilling to give the "special consideration" test talismanic significance, fearful of providing an employer-administrator "carte blanche to make statements that the employer knows to be false, or that have no reasonable basis in fact, simply because the statements concern the future." [FN125]

FN125. Id. at 122, 126.

Taking the lead from *Ballone,* the Ninth Circuit, although adopting the *Fischer II* serious consideration test in the context of defining an employer's duty to affirmatively disclose in response to an employee's inquiry whether it is seriously considering a plan change, found that *Ballone* more accurately defines an employer's responsibility to not misrepresent future plan changes. [FN126] In *Bins v. Exxon,* the Ninth Circuit read *Varity* to suggest that an employer has a fiduciary duty to communicate information about the future of plan benefits, and concluded that *Fischer II* best accomplishes this goal while balancing the employer's interest in not being overly burdened by the responsibility to communicate constantly the progress of its

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Case 3:02-cv-00277-JCH    Document 56-4    Filed 11/03/2003    Page 7 of 9

338 F.3d 407                                                                   Page 17
30 Employee Benefits Cas. 2249, Pens. Plan Guide (CCH) P 23984O
**(Cite as: 338 F.3d 407, 2003 WL 21557397 (5th Cir.(Tex.)))**

consideration of potential plans. [FN127] It emphasized, as did the *Fischer II* court, that the test "should not be applied so rigidly as to distract attention from the core inquiry, which must always be whether the employer-fiduciary has violated its fiduciary duty of loyalty to plan participants by failing to disclose material information." [FN128]

FN126. *Bins v. Exxon Co. U.S.A.*, 220 F.3d 1042 (9th Cir.2000) (en banc).

FN127. *Id.* at 1047-49.

FN128. *Id.* at 1049.

Then, in *Wayne v. Pacific Bell*, the Ninth Circuit clarified that the holding in *Bins* adopting the serious consideration test applied only to claims that employers breached their fiduciary duties not to disclose their consideration of a plan change. [FN129] In deciding a claim that an employer affirmatively misrepresented future plan benefits, the court found the *Ballone* rule more appropriate. [FN130] Thus, the Ninth Circuit has implemented a two-tiered approach to a company's fiduciary duty of disclosure.

FN129. 238 F.3d 1048, 1050-51, 1055 (9th Cir.2001).

FN130. *Id.* at 1055.

D.

**\*\*13** [7] This review of the evolution of the scope of an employer's duties regarding future plan changes, including the creation and proliferation of the "serious consideration" doctrine, suggests that we need address several interrelated issues: First, should we find that an employer who chooses to speak about prospective plan changes has a fiduciary duty not to misrepresent those changes, and, if so, at what point does that duty arise--at the time the employer "seriously considers" the change, or some other time during the process. Second, should we also place upon the employer an affirmative obligation to disclose a future plan change, and, if so, at what point.

With respect to an employer's misrepresentations, we conclude, as have all of the circuits that have considered this issue, that an employer, if it chooses to communicate about the future of a participant's plan benefits, has a fiduciary duty to refrain from misrepresentations. The Supreme Court's words in *Varity* instruct that when an employer chooses, in its discretion,**\*425** to communicate about future plan benefits, it does so as an ERISA fiduciary. [FN131] In speaking it is exercising discretionary authority in administration of the plan, a specifically enumerated fiduciary function under ERISA. [FN132] Thus, it has a duty to refrain from "knowingly and significantly" deceiving a plan's beneficiaries "in order to save the employer money at the beneficiaries' expense," which would be inconsistent with its fiduciary responsibility to act "solely in the interest of the participants and beneficiaries." [FN133] This is consistent with our defining of the scope of an employer's fiduciary duties: In *McCall* we reasoned that "[p]roviding information to beneficiaries about likely future plan benefits falls within ERISA's statutory definition of a fiduciary act. When an ERISA plan administrator speaks in its fiduciary capacity concerning a material aspect of the plan, it must speak truthfully." [FN134]

FN131. *Varity Corp. v. Howe*, 516 U.S. 489, 506, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996).

FN132. *See id.* at 504-05, 116 S.Ct. 1065.

FN133. *Id.* at 506, 116 S.Ct. 1065 (internal quotation marks omitted).

FN134. *McCall v. Burlington N./Santa Fe Co.*, 237 F.3d 506, 510 (5th Cir.2000).

[8] Although we join our sister circuits in recognizing this duty, we cannot agree that misrepresentations are actionable only after the company has seriously considered the plan change. *Varity* does not suggest that the obligation not to misrepresent materializes near the end of a progression, but rather implies that whenever an employer exercises a fiduciary function, it must speak truthfully. Nor do we find a safe harbor for predictions of the future. When an employer speaks

Case 3:02-cv-00277-JCH    Document 56-4    Filed 11/03/2003    Page 8 of 9

338 F.3d 407                                                                                                      Page 18
30 Employee Benefits Cas. 2249, Pens. Plan Guide (CCH) P 239840
(Cite as: 338 F.3d 407, 2003 WL 21557397 (5th Cir.(Tex.)))

to the future of a plan, employees are justified in concluding that it is backed by the authority of a plan administrator, and should therefore be entitled to trust in those representations.

Accordingly, we reject the view that the duty to speak truthfully only arises once the employer begins seriously considering a plan. We see no reasoned justification for drawing the line at that point in time. We also decline to find, as did the *Fischer II* court, that a misrepresentation is only material, and therefore actionable, once the company has seriously considered the plan change. This view does not comport with the Supreme Court's dictates, in the related context of securities law, [FN135] that materiality is a fact-specific inquiry not capable of easy line-drawing.

> FN135. The *Ballone* court looked to securities law for assistance in defining the materiality inquiry in ERISA breach of fiduciary duty cases. *Ballone v. Eastman Kodak Co.*, 109 F.3d 117, 124 (2d Cir.1997).

In *Basic Inc. v. Levinson,* the Court rejected a bright-line approach to materiality similar to the "serious consideration" test. [FN136] Beginning in September 1976, Basic had engaged in meetings with another company, Combustion, regarding the possibility of a merger. [FN137] During 1977 and 1978, Basic issued three public statements denying that it was engaged in merger negotiations. [FN138] In late 1978, Basic announced its approval of Combustion's tender offer for all of its outstanding shares. [FN139]

> FN136. 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988).

> FN137. *Id.* at 227, 108 S.Ct. 978.

> FN138. *Id.*

> FN139. *Id.* at 228, 108 S.Ct. 978.

**14 Plaintiffs, former Basic shareholders who sold their stock after Basic's first public denial but before the merger, argued that the defendants had issued three *426 false or misleading public statements in violation of § 10(b) of the Securities Act and Rule 10b-5. [FN140] They averred that they were injured by selling Basic shares at artificially depressed prices in a market affected by their reliance upon the defendants' misleading statements. [FN141]

> FN140. *Id.*

> FN141. *Id.*

The district court granted summary judgment for the defendants, holding that any misrepresentations were immaterial as a matter of law since any negotiations taking place when the statements were issued were not destined with reasonable certainty to become a merger agreement. [FN142] The Sixth Circuit reversed, reasoning that while the defendants were under no general duty to disclose their discussions with Combustion, any statement the company voluntarily released could not be so incomplete as to mislead. [FN143] It rejected the argument that preliminary merger discussions were immaterial as a matter of law, and held that once a statement is made denying the existence of any discussions, even discussions that might not have been material in the absence of the denial are material because they make the statement made untrue. [FN144]

> FN142. *Id.* at 228-29, 108 S.Ct. 978.

> FN143. *Id.* at 229, 108 S.Ct. 978.

> FN144. *Id.*

The Supreme Court began its discussion of materiality by reiterating its prior statement that, under the securities laws, "[a]n omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in" his decision. [FN145] It recognized that "certain information concerning corporate developments could well be of dubious significance," and that too low of a standard might "bring an overabundance of information within its reach, and lead management" to "bury the shareholders in an avalanche of trivial information--a result that is hardly conducive to informed decisionmaking." [FN146] It also admitted

338 F.3d 407                                                                                                    Page 19
30 Employee Benefits Cas. 2249, Pens. Plan Guide (CCH) P 239840
(Cite as: 338 F.3d 407, 2003 WL 21557397 (5th Cir.(Tex.)))

that where the event is contingent or speculative in nature, it is difficult to ascertain whether the reasonable investor would have considered the information significant at the time. [FN147]

> FN145. *Id.* at 231, 108 S.Ct. 978 (internal quotation marks omitted).

> FN146. *Id.* (internal quotation marks omitted).

> FN147. *Id.* at 232, 108 S.Ct. 978.

Nevertheless, the Court shunned the idea that materiality was amenable to an easy formula, and in doing so explicitly rejected the standard for materiality created by the Third Circuit, which is similar in many respects to *Fischer II* 's definition of the "serious consideration" rule. [FN148] The *Basic* Court explained that under that circuit's law at the time, preliminary merger discussions were per se immaterial "until 'agreement-in-principle' as to the price and structure of the transaction [were] reached." [FN149] Consequently, "information concerning any negotiations not yet at the agreement-in-principle stage could be withheld or even misrepresented without a violation of Rule 10b-5." [FN150]

> FN148. *See id.* at 232-33, 108 S.Ct. 978.

> FN149. *Id.* at 233, 108 S.Ct. 978 (internal quotation marks omitted).

> FN150. *Id.*

The Court acknowledged that several reasonable rationales had been offered in support of this test: It answered the concern that an investor not be overwhelmed by excessively detailed and trivial information, *427 assisted in preserving the confidentiality of the discussions, and "provide[d] a usable, bright-line rule for determining when disclosure must be made." [FN151] Courts adopting the "serious consideration" test have used the same rationales, explaining that it prevents the employer from being burdened "with providing a constant, ever-changing stream of information to inquisitive plan participants"; [FN152] relieves "employers [from] reveal[ing] too soon their internal deliberations to inquiring beneficiaries," which "could seriously impair the achievement of legitimate business goals"; [FN153] and provides a bright-line rule allowing for easier resolution of cases upon summary judgment, unlike the Second Circuit's "fact-specific analysis," which might "result generally in trial litigation." [FN154]

> FN151. *Id.*

> FN152. *Hockett v. Sun Co.,* 109 F.3d 1515, 1523 (10th Cir.1997).

> FN153. *Id.* (internal quotation marks omitted).

> FN154. *Martinez v. Schlumberger Ltd.,* 191 F.Supp.2d 837, 851 (S.D.Tex.2001).

**15 After listing these rationales, however, the *Basic* Court concluded that none of them "purports to explain why drawing the line at agreement-in-principle reflects the significance of the information upon the investor's decision." [FN155] Taking each rationale in turn, it observed that "[a]rguments based on the premise that some disclosure would be 'premature' in a sense are more properly considered under the rubric of an issuer's duty to disclose," not materiality. [FN156] Moreover, "[t]he 'secrecy' rationale is simply inapposite to the definition of materiality." [FN157] It added:

> FN155. *Basic,* 485 U.S. at 234, 108 S.Ct. 978.

> FN156. *Id.* at 235, 108 S.Ct. 978.

> FN157. *Id.*

A bright-line rule indeed is easier to follow than a standard that requires the exercise of judgment in the light of all the circumstances. But ease of application alone is not an excuse for ignoring the purposes of the Securities Acts and Congress's policy decisions. Any approach that designates a

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works