FILED

2003 NOV 10 P 12: 50

US DISTRICT COURT
BRIDGEPORT CT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL G. ZITO, JR., | : CIVIL ACTION NO. |
| | 3:02CV00277(JCH) |
| Plaintiff, | |
| v. | : |
| SBC PENSION BENEFIT PLAN, | |
| SBC COMMUNICATIONS INC., | |
| SOUTHERN NEW ENGLAND | |
| TELEPHONE COMPANY AND | |
| PRICEWATERHOUSECOOPERS LLP. | |
| Defendants. | : NOVEMBER 7, 2003 |

**PLAINTIFF'S REPLY TO DEFENDANTS'
MEMORANDUM
DATED OCTOBER 29, 2003.**

Defendants, through counsel, in their Motion for Summary Judgment (September 15, 2003) and their Reply to Plaintiff's Opposition (October 29, 2003) deny the existence of genuine issues as to any material fact, which rise to a level sufficient enough to bar their entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c). Defendants further argue "arbitrary and capricious" is the only appropriate standard by which to review the issues of this case. Plaintiff disagrees: The record, as previously presented, shows (1) there exist genuine issues of material fact; and, (2) a "de novo standard" rather than the more

restrictive "arbitrary and capricious" standard is appropriate for making a determination on the facts as they exist.

## A. Material Facts Are In Dispute.

The facts in dispute are about timing; the critical issue of this case is about when the Retirement Enhancement Plan was activated. Plaintiff alleged in his Amended Complaint a claim for damages resulting from Defendants' actions which he described as "arbitrary, capricious, not made in good faith, unsupported by substantial evidence, erroneous as a matter of law, and in violation of ERISA." Amended Complaint, Count One at para. 25. Plaintiff claimed damages and a loss of benefits "[a]s the direct and proximate result of the actions of Defendants, the Pension Plan of Employer SBC Communications Inc., and the believed fiduciaries Employer SBC Communications Inc., Employer SNET and PricewaterhouseCoopers LLP." *Id.* Para 26, 27.

The Plaintiff asserts the Defendants began their efforts to implement an enhancement to the pension plan, under which the Plaintiff was covered, at a time far earlier than Defendants admit. He further asserts, had he had awareness of the impending change he would have forestalled his plans and retired under the pension benefit circumstances that ultimately became more favorable to him. The Defendants maintain there were no efforts by the employer to enhance the Plaintiff's potential pension benefit until a point well beyond the actual retirement of the Plaintiff. The Plaintiff stands by the

record as put forward in his Amended Complaint (May 8, 2002) and his Memorandum in Opposition to Motion for Summary Judgment (September 30, 2003). Plaintiff claims the record is replete with additional support, documentation and evidence for his intent to retire with the most advantageous retirement provisions available to him, beginning with the *Administrative Appeal of Pension Decision* he filed to comply with the administrative review procedures on August 9, 2001.

### B. A De Novo Review is Appropriate Under The Circumstances.

Defendants assert a *de novo* review is barred by every interpretation of law as it resides in ERISA. This position dismisses the significant holdings on the issue by sidestepping the applicability of a *de novo* review beyond only those matters where the claim is of a breach of fiduciary duty enforceable through Section 502(a)(3) of ERISA, 29 U.S.C. sec. 1104.

Where an employer-fiduciary gives serious consideration to a proposal to change retirement benefits, it has an affirmative duty to disclose information about such proposal to plan participants and beneficiaries to whom the employer knows, or has reason to know, the information is material. *Wayne v. Pacific Bell*, 238 F.3d 1048 (9th Cir. 2001). In *Wayne*, as here, employee(s) retired at a time the employer was seriously considering a more favorable retirement program. The employers failed to disclose their plans, in spite of the fact the employees inquired about the plan for a more favorable retirement program.

Adopting the rule from *Bins*, the court held "honest answers to questions once serious consideration has begun," is required. *Wayne v. Pacific Bell*, 238 F.3d 1048 (9th Cir. 2001), quoting *Bins v. Exxon Company, U.S.A.*, 220 F.3d 1042 (9th Cir. 2000). When an employer-fiduciary begins to give "serious consideration" to an amendment of a retirement or severance program, it has a fiduciary obligation to communicate with plan participants and beneficiaries. *Id.*

The point at which serious consideration of an amendment/change to the retirement or severance program begins does not mark the time when the fiduciary duty of an employer-fiduciary begins. The fiduciary's duty to inform plan participants and beneficiaries about possible changes in benefits under the plan **exists at all times**. *Wayne v. Pacific Bell*, 238 F.3d 1048 (9th Cir. 2001). [Emphasis added] By not adequately informing voluntary retirees of a termination package under consideration before the retirement of the employee an employer is held to have failed its duty to disclose thereby causing a breach of the employer's fiduciary duty. *Adamczyk v. Lever Bros. Co.*, 33 F.Supp. 2d 679, 687 (N.D.Ill. 1998). Based upon the facts as pled, there can be no misunderstanding the claims of the Plaintiff rise to the level of "material misrepresentations." They amount to a breach of Defendants' duty and, as such, are erroneous as a matter of law and in violation of ERISA.

Plaintiff suggests support for finding the proper standard for review of the issue at hand is *de novo* as found in *Boesel*. For even where a plan may give an administrator or fiduciary discretion to interpret terms of a plan generally, where a specific section of the plan at issue contains categorical language which requires no exercise of discretion, the court may use the *de novo* standard to review the fiduciary's application of that plan section. *Boesel v. Chase Manhattan Bank, N.A.* (1999, WD NY) 62 F.Supp.2d 1015). Plaintiff asserts the language of the Plan is silent on the issue of the timing of serious consideration for implementation of the Plan. By allowing the administrator to act here, where review of those actions will be by use of an "arbitrary and capricious" standard, is to allow too broad an authority to the decision makers and an exercise of authority not intended by the grant of power expressly provided by the Plan. The Enhanced Pension and Retirement Program states:

> Article 6. Plan Administrator and Committee
> All **decision making power** that is not explicitly delegated to the EPR Delegate and that is necessary or appropriate **for administering** the EPR Program shall be exercised by the Plan Administrator and the Committee pursuant to the otherwise applicable provisions of the Nonbargained Program. The Committee and each organizational committee or subcommittee to whom claim determination or review authority has been delegated shall have **full and exclusive authority and discretion to grant and deny claims for benefits, including the power to interpret the EPR Program and determine the eligibility of any individual to receive benefits** pursuant to the EPR Program. The decision of the Committee or any organizational committee or subcommittee **on any claim in accordance with the claim procedures** established by the Nonbargained Program shall be final and conclusive and shall not be subject to further review. [Emphasis added]

Exh. A. It appears to the Plaintiff the referenced language supports a clear case of "*expressio unius est exclusio alterius.*" And this doctrine goes to the heart of deciding the key element of when "serious consideration" of the Plan occurred and, in following, whether the Plaintiff can be determined to fall within the timeframe necessary to establish he should be included in the Plan. Article 6 seems to suggest by clear and concise language a grant of authority is present in the Plan Administrator and Committee for "decision making power," "for administering," "full and exclusive authority and discretion to grant and deny claims for benefits, including the power to interpret the EPR Program and determine the eligibility of any individual to receive benefits," "on any claim in accordance with the claim procedures."

What this explicit language does not do is give this same level of authority, discretionary or otherwise, to the Plan Administrator and Committee to determine the timing of when the Plan actually took on a life. Can the Plan Administrator and Committee determine eligibility? Unequivocally it can for this grant of authority is explicit in the language of the Plan. Can the Plan Administrator and Committee determine when the Plan became effective for the purpose of becoming accessible to any employee so choosing to access its benefits? The language of the Plan that grants the Plan Administrator and Committee its powers of interpretation do not grant this authority nor can it be implied. The express authority to determine when the Plan took on life in order to

- 6 -

become an instrument accessible to those wishing to retire with an enhanced benefit is not found within the scope of the powers granted to the Plan Administrator and Committee. There is no section, nor article, within the Plan that addresses this issue and no grant for a power over same whether with discretion or otherwise. The language to cover this authority just does not exist. For this reason the Plan Administrator and Committee do not have the discretion nor the authority for making a decision that precludes the Plaintiff from inclusion in the Plan nor is the "arbitrary and capricious" standard available for review of their decision to exclude him.

For the reasoning articulated in *Boesel*, the Defendants attempt to impose a standard other than one of a *de novo* review should fail. Even where a plan may give an administrator or fiduciary discretion to interpret terms of a plan generally, where a specific section of the plan at issue contains categorical language which requires no exercise of discretion, the court may use the de novo standard to review the fiduciary's application of that plan section. *Boesel v. Chase Manhattan Bank, N.A.* (1999, WD NY) 62 F.Supp.2d 1015). Here, as in *Boesel*, the language to support Defendants' argument for limiting the standard of a review to other than *de novo* does not exist. The Plan documents just do not support it.

### C. **The Stanard for Summary Judgment.**

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary Judgment under ERISA is precluded where genuine issues of material fact are raised. Employee Retirement Income Security Act of 1974, sec. 2 *et seq.*, 29 U.S.C.A. sec. 1001 *et seq.* In the instant matter the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits show that there are genuine issues as to material facts. The Court should deny Defendants' request that judgment enter in their favor.

### D. **CONCLUSION**

For these reasons, and those as put forth in Plaintiff's Memorandum in Opposition to Motion for Summary Judgment Dated September 15, 2003, Plaintiff respectfully requests the Court deny Defendants' Motion for Summary Judgment Dated September 15, 2003 with respect to Counts One and Two of Plaintiff's Amended Complaint dated May 8, 2002.

Dated at Madison, Connecticut this 7th day of November 2003.

                                                        THE PLAINTIFF,
                                                        MICHAEL G. ZITO, JR.

                                                        By: _____

                                                        Edmond Clark
                                                        83 Scotland Avenue
                                                        Post Office Box 133
                                                        Madison, CT  06443-0133
                                                        Telephone: (203) 245-4602
                                                        Facsimile: (203) 245-9734
                                                        E-Mail: Eclarkmadisonlaw@aol.com
                                                        Federal Bar No.  ct22396
                                                        His Attorney

Submitted at SBC Communications In_
_____ Meeting held
on September 29, 20 00
_____
Vice President and Secretary

ENHANCED PENSION AND RETIREMENT PROGRAM

**EXHIBIT A**

1. Scope

    Set forth below are the terms and conditions of the Enhanced Pension and Retirement Program ("EPR Program") which shall be incorporated into the SBC Pension Benefit Plan—Nonbargained Program (the "Nonbargained Program").

    This EPR Program applies to any Eligible Employee who becomes an EPR Terminee by electing to become an EPR Terminee, being selected as an EPR Terminee, and terminating employment on November 15, 2000 (or such other date permitted pursuant to the terms of Subsection 3.3 below).

2. Definitions

    Unless otherwise defined below or elsewhere in this document, words and phrases used herein shall have the meanings assigned to them by the Nonbargained Program.

    "Actuarial Equivalent" shall mean the benefit having the same value as the benefit it replaces based upon the "applicable mortality table" specified by the Secretary of the Treasury for calendar year 2000 in accordance with Code Section 417(e)(3) and an interest rate of 5.72%.

    "Business Unit" shall mean a portion of the Company and its subsidiaries as listed in Attachment A to the EPR Program.

    "Business Unit Cap" shall mean the maximum number of Electing Employees within a Business Unit who shall be permitted to terminate employment pursuant to the terms of this EPR Program as set forth in Attachment A to the EPR Program.

    "Capped Organization" shall mean a subdivision of a Seniority Group designated by the EPR Delegate in accordance with Subsection 5.2.

    "Capped Organization Maximum" shall mean the maximum number of Electing Employees within a Capped Organization who shall be permitted to become EPR Terminees as determined by the EPR Delegate in accordance with Subsection 5.2.

    "Data Freeze Date" shall mean September 27, 2000.

    "Electing Employee" shall mean an EPR Eligible Employee who affirmatively elects to be considered under the EPR Program in accordance with administrative procedures established by the Plan Administrator.

    "EPR Calculation Date" shall be November 15, 2000, unless a different date is specified pursuant to the terms of Paragraph 3.3.2, 3.3.3, or 3.3.4 below.

5.7  Failure of Nondiscrimination Testing

In the event that it is determined that the Plan is not satisfying applicable qualified plan nondiscrimination requirements under the Code, the EPR Delegate may increase the Seniority Group Cap of any Seniority Group, but only with respect to nonhighly compensated Electing Employees, and only to the extent necessary to satisfy such nondiscrimination requirements.

5.8  Mutually Agreed Revocation of Retirement Election

After an Eligible Employee has been designated as an EPR Terminee and before such Eligible Employee has commenced receipt of benefits from the SBC Pension Benefit Plan, the EPR Delegate may request that such Eligible Employee revoke his decision to receive benefits under the EPR Program. If the Eligible Employee consents, then the Eligible Employee will be deemed to have never elected benefits under the EPR Program, and such Eligible Employee shall not be entitled to any benefits under the EPR Program.

6.  Plan Administrator and Committee

All decision making power that is not explicitly delegated to the EPR Delegate and that is necessary or appropriate for administering the EPR Program shall be exercised by the Plan Administrator and the Committee pursuant to the otherwise applicable provisions of the Nonbargained Program. The Committee and each organizational committee or subcommittee to whom claim determination or review authority has been delegated shall have full and exclusive authority and discretion to grant and deny claims for benefits, including the power to interpret the EPR Program and determine the eligibility of any individual to receive benefits pursuant to the EPR Program. The decision of the Committee or any organizational committee or subcommittee on any claim in accordance with the claim procedures established by the Nonbargained Program shall be final and conclusive and shall not be subject to further review.

## CERTIFICATION OF SERVICE.

This is to certify that a copy of the foregoing has been mailed via first class mail, postage prepaid, on this 7th day of November 2003, to:

SBC Pension Benefit Plan, SBC Communications Inc., Southern New England Telephone Company:

>c/o Lori B. Alexander, Esq.
>TYLER COOPER & ALCORN, LLP
>205 Church Street
>P.O. Box 1936
>New Haven, CT 06509

_____
Edmond Clark