UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL G. ZITO : | |
|     Plaintiff : | |
| : | CIVIL ACTION NO. |
| v. : | 3:02-cv-277 (JCH) |
| : | |
| SBC PENSION BENEFIT PLAN, : | MARCH 1, 2005 |
| ET AL, : | |
|     Defendants : | |

**MEMORANDUM OF DECISION ON
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 40]**

**I.   INTRODUCTION**

Plaintiff, Michael G. Zito ("Zito"), is a former employee of the defendant Southern New England Telephone Company ("SNET"), a wholly-owned subsidiary of defendant SBC Communications, Inc. ("SBC"). Zito brought this lawsuit against SNET, SBC and defendant SBC Pension Benefit Plan (the "Plan") after he was denied eligibility for an enhanced pension benefit program announced several months after his retirement.

There are two claims remaining in the lawsuit, each brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). In Count One, Zito claims that he was improperly denied inclusion in the enhanced SBC Pension Benefit Plan in violation of ERISA, 29 U.S.C. § 1132(a)(1)(B). In Count Two, Zito alleges that the defendants failed to provide him with documents relating to the enhanced plan, in violation of ERISA, 29 U.S.C. § 1132(c). All defendants have moved for summary judgment as to each count. In opposing summary judgment, Zito appears to raise a new claim that the denial of benefits was a breach of the defendants' "fiduciary duty" to

1

plaintiff.[1]  For the reasons stated below, summary judgment is granted as to both counts.

II.    **STATEMENT OF FACTS**[2]

Zito was employed at SNET for a period of thirty-one years, until he voluntarily retired on April 7, 2000.  On a number of occasions, from 1997 through March of 2000, while still an employee at SNET, Zito inquired as to the availability of pension enhancements or retirement incentives.  On these occasions, Zito was told that there were no programs for which he was eligible.

On September 7, 2000, five months after Zito retired from SNET, SNET announced that it would be instituting an Enhanced Pension and Retirement Program (the "EPR"), which would provide incentives, in the form of enhanced pension benefits to eligible, current employees to voluntarily terminate their employment during a set period provided in the EPR.  In order to receive benefits under the EPR, active company employees had to terminate their employment on November 15, 2000.  The EPR also set a retroactive eligibility date back to August 17, 2000, as the date upper management first directed responsible employees to begin preparing proposals to

---

[1] Zito filed an unauthorized "Reply" to defendants' Reply.  [Dkt. No. 58, Local Rule 7 (D.Conn.)].  The court has not stricken it.  Defendants requested leave to file a Sur-Reply [Dkt. Nos. 59 and 61].  In response to those requests, Zito then moved for leave to file a "Supplemental Pleading."  [Dkt. No. 64]  The court grants all the motions in order to avoid any suggestion that it overlooked something material to its decision.  However, the court reminds plaintiff's counsel that the Local Rules provide for a memorandum in support of a motion, or memorandum in opposition thereto, and a reply by the movant.  Local Rule 7(a) and (d).

[2] This statement reflects the undisputed facts or the disputed facts taken in the light most favorable to the plaintiff.

create an incentive for current employees to voluntarily terminate their employment. The EPR was incorporated into, and became part of, the SBC Pension Benefit Plan. The EPR was approved by the SBC Human Resources Committee on September 29, 2000.

By letter dated December 19, 2000, Zito filed a claim for EPR benefits asking that the SBC Pension Plan Service Center (the "Service Center") review his eligibility under the Plan. By letter dated March 27, 2001, the Service Center denied his claim for benefits, reasoning that Zito had "terminated employment on April 7, 2000, which was prior to August 17, 2000. Therefore, under the terms of the plan, you are not eligible to participate in the EPR." Defs.' Exh. 5.

By letter dated May 11, 2001, Zito appealed the denial of benefits to the Benefit Plan Committee (the "Committee"). On May 31, 2001 and again on June 15, 2001, Zito, through his attorney, requested various documents from defendants, claiming he was entitled to these documents pursuant to ERISA, 29 U.S.C. § 1021(a) and 1024(b)(4). Specifically, Zito requested:

1. Documents relative to the Plan and the EPR under the SBC Pension Benefit Plan (SBCPBP)
2. The Plan
3. All SBC Pension Plans in effect prior to April 2000 and subsequent to the most closely related in time pension plan of SNET
4. All SBC Pension Plans in effect subsequent to April 2000.
5. Any and all enhanced pension and retirement plans offered to employees during the years 1998, 1999, 2000, and 2001 inclusive.
6. Instructions to employees defining terms for qualifying for pensions and Enhanced Pension and Retirement Plans for the periods defined above.
7. Any and all prospectus documents pertaining to the SNET/SBC merger.
8. Any and all prospectus documents pertaining to the Ameritech/SBC

        merger.
9. Any and all prospectus documents pertaining to any merger involving SBC with other entities and SNET with any other entities.
10. Annual Reports and 10-K Reports of SBC, SNET and affiliated entities for the years 1998, 1999, 2000 and 2001.
11. Minutes of any committees or organizations, internal or external, directly and indirectly involved in the planning of pension, enhanced pension or other employee benefit related matters including management committees, senior management committees and Board committees and ad hoc committees.
12. Minutes of monthly and annual meetings of the Boards of Directors of SNET, SBC and other entities affiliated with SBC and SNET for the years 1998 through 2001 inclusive.
13. Proposed and final approved budgets of SNET and SBC and affiliated entities for the years 1998 through 2001 inconclusive showing costs of employee pension benefits and employee health benefits as well as employee staffing levels by department.
14. Zito's payroll records for the period January 2000 through December 2001 inclusive.

On June 26, 2001, Zito was provided with copies of the summary plan description and the EPR Plan document. Additionally, Zito was provided with a written description of the EPR Program as well as information regarding how to qualify for and elect the EPR Program. On October 22, 2001, the Benefit Plan Committee of SBC denied Zito's appeal of the decision denying him eligibility under the EPR.

      This lawsuit followed in which Zito claims that defendants unlawfully and erroneously interpreted the Plan and denied him benefits due to him under the EPR announced five months after his retirement.

### III.   DISCUSSION

#### A.   Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); see also, Anderson v. Liberty Lobby, 477 U.S. 242, 256 (1986) (party must present affirmative evidence in order to defeat a properly supported motion for summary judgment). Although the moving party has the initial burden of establishing that no factual issues exist, "[o]nce that burden is met, the opposing party must set forth specific facts demonstrating that there is a genuine issue for trial." Sylvestre v. United States, 771 F.Supp. 515, 516 (D.Conn.1990).

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322-23; see also Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir.1995) (movant's burden satisfied if it can point to an absence of evidence to support an essential element of nonmoving party's claim). In this regard, mere assertions and conclusions of the party opposing summary judgment are not enough to defend a well-pleaded motion. Lamontagne v. E.I. Du Pont de Nemours & Co., 834 F.Supp. 576, 580 (D.Conn. 1993),

aff'd. 41 F.3d 846 (2d Cir.1994).

The court is mandated to "resolve all the ambiguities and draw all inferences in favor of the nonmoving party . . . ."  Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992).  "Only when reasonable minds could not differ as to the impact of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  If the nonmoving party submits evidence which is "merely colorable", or is not "significantly probative," summary judgment may be granted. Anderson, 477 U.S. at 249-50 (scintilla of evidence in support of non-movant's position insufficient; there must be evidence from which a jury could reasonably find in its favor); see also, Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000).

    **B.**    **Denial Of Benefits Claim**

Count One of Zito's Amended Complaint asserts a claim under section 1132(a)(1)(B) for denial of benefits.  Specifically, Zito alleges that defendants erroneously interpreted plan provisions providing for credited service in determining eligibility and that the defendant failed to consider evidence regarding his eligibility for the EPR.

When evaluating a challenge to denial of benefits under an ERISA plan, a court must first determine whether the Plan confers discretionary authority on the Plan's Administrator.  "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the

terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). "When an employee benefit plan grants a plan fiduciary discretionary authority to construe the terms of the plan, [t]he court may reverse only if the fiduciary's decision was arbitrary and capricious." Rombach v. Nestle USA. Inc., 211 F.3d 190, 194 (2d Cir. 2000) (internal quotation marks omitted) (quoting Miller v. United Welfare Fund, 72 F.3d 1066, 1070 (2d Cir.1995)). "The plan administrator bears the burden of proving that the arbitrary and capricious standard of review applies, since 'the party claiming deferential review should prove the predicate that justifies it.'" Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 249 (2d Cir.1999) (quoting Sharkey v. Ultramar Energy Ltd., 70 F.3d 226, 230 (2d Cir.1995)).

The Plan in the present case unambiguously confers discretionary authority on the Committee to determine matters of eligibility. The Plan provides:

> The Committee and each organizational committee or subcomitee to whom claim determination or review authority has been delegated shall have full and exclusive authority and discretion to grant and deny claims under the SBCPBP, including the power to interpret the SBCPBP and determine the eligibility of any individual to participate in and receive benefits under the SBCPBP. The decision of the Committee or any organizational committee or subcommittee, as applicable, on any claim, in accordance with the claim procedures set forth in this Subsection . . . shall be final and conclusive and shall not be subject to further review.

Defts.' App. [Dkt. No. 43] at Exh. 12, ¶3.5.4. Nevertheless, in opposing summary judgment, Zito asserts that *de novo* review applies. He argues that, inasmuch as the language of the Plan is silent on whether the administrator has discretion on the issue of the timing of "serious consideration," applying an arbitrary and capricious standard

gives the administrator authority not intended by the Plan.  The court does not agree.  While the issue in his claim involved is the question of timing, nonetheless he seeks review of the denial of his claim.  Based on the plain language of the Plan, the arbitrary and capricious standard governs the review of the Committee's decision denying Zito benefits under an enhanced retirement incentives program.

The "arbitrary and capricious standard" is highly deferential to the Plan administrator's decision.  Zito must present probative and admissible evidence that the Plan Administrator's decision to deny him benefits was actually "without reason, unsupported by substantial evidence or erroneous as a matter of law."  Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995).  Under this standard, the court is "not free to substitute [its] own judgment for that of the [Plan administrator] as if [it is] considering the issue of eligibility anew."  Id.

Under the arbitrary and capricious standard, Zito has not met his burden to show that the Committee's decision to deny him benefits was "without reason" or "erroneous as a matter of law."  The EPR establishes two classes of voluntarily terminated employees that would be eligible for enhanced benefits:  (1) employees who were actively employed by the Company on September 7, 2000 and who voluntarily elected to terminate employment on November 15, 2000; and (2) employees who previously terminated their employment between August 17, 2000 and September 8, 2000.  [Dkt. No. 43 at Ex. 2, ¶ 3:3.3.]  The Committee concluded that Zito was not eligible for benefits under either category.  The clear terms of the EPR and the undisputed record

in this case, including documentary evidence and Zito's own sworn testimony, show that he voluntarily elected to terminate his employment effective April 7, 2000. That date was more than four months prior to the eligibility dates established in the EPR. Accordingly, the Committee's decision was neither arbitrary nor capricious in light of the plain terms of the Plan; indeed, it was correct. Zito has proffered no evidence that the Committee erroneously interpreted the EPR or the Plan, nor has he proffered any evidence that he was eligible for the enhanced retirement benefits under any terms of the EPR. Based on the record before it, the court concludes that the Committee's decision was not arbitrary and capricious under the clear terms of the Plan.

### C. Failure To Provide Documents Claim

In Count II, Zito alleges that the defendants violated Section 502(c) of ERISA, 29 U.S.C. 1132(c), by failing to provide documents that he had requested. By letters dated May 31, 2001 and June 15, 2001, Zito's attorney requested numerous documents from defendants, claiming that Zito was entitled to these documents under ERISA, 29 U.S.C. ¶¶ 1021(a) and 1024(b)(4). Sections 1021(a) and 1024(b)(4) of ERISA provide, in relevant part, that upon written request, a plan administrator must furnish a plan participant or beneficiary with the summary plan description as well as "other instruments under which the plan is established or operated."[3] Courts have declined to

---

[3] Section 29 U.S.C. 1024(b)(4) provides in relevant part:

The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

give a broad interpretation to the phrase "other instruments under which the plan is established or operated." See, e.g., Bd. of Trs. of the CWA/ITU Negotiated Pension Plan v. Weinstein, 107 F.3d 139, 143 (2d Cir. 1997) (". . . Congress did not mean the clause 'instruments under which the plan is . . . operated' to encompass all of the plan's papers, documents, recorded information, or reports." Rather, in Weinstein, the Second Circuit held that this clause is limited to formal documents that govern a plan. See id. at 144.

In this case, Zito has received from defendants documents concerning the EPR. Zito admits that he was provided with the summary plan description and the plan document for the EPR. He was also provided with a written description of the EPR as well as information regarding how to qualify for and elect the EPR. These are documents to which he was entitled under ERISA. ERISA does not entitle Zito to copies of SBC's corporate budgets, Board of Directors' meetings, or documents related to SBC's mergers with other corporate entities. In bringing this claim, Zito has not identified a single document that he was not provided and to which he was entitled under ERISA. Moreover, Zito has admitted that he was provided all documents he "requested that he was entitled to under ERISA." Pl.'s Rule 56a(2) Stat. ¶35.

### D.   Breach Of Fiduciary Claim

In responding to the defendants' motion for summary judgment, Zito raises the argument that his denial for benefits claim is a claim for breach of fiduciary duty. As a preliminary matter, Zito has not pled a claim for breach of fiduciary duty, so this

argument should not have to be addressed.

Even so, on the record before the court, even had Zito pled this claim, Zito has proffered no evidence to raise an issue of fact on such a claim. Specifically, Zito argues that the defendants breached their fiduciary duty by "deliberate deception and acts of a material misrepresentation." Zito also argues that the setting of the eligibility date to August 17, 2000 was arbitrary and capricious and a breach of the defendants' fiduciary duty. Zito provides no evidence that the defendants failed to provide or misrepresented information regarding the forthcoming enhanced retirement package or that prior planning or serious consideration regarding the enhancement retirement package occurred prior to August 17, 2000 or prior to Zito's retirement.

Zito relies on cases which only underscore his own failure to offer specific evidence. In Wayne v. Pacific Bell, 238 F.3d 1048 (9th Cir. 2001), six former employees claimed that their employer induced them to retire under an early retirement incentive program by actively misrepresenting the company's financial condition and failing to disclose that the company was considering offering a more favorable retirement plan. In that case, there was evidence that the company had hidden a plan to offer a better retirement program while it was strongly encouraging employees to retire under the less favorable plan and, in fact, told employees there would be no more favorable retirement incentives. Similarly, Broga v. Northeast Utilities, 315 F.Supp.2d 212 (D.Conn. 2004), was an action brought by nineteen former employees who retired prior to their employer's announcement of enhanced retirement incentives. These

employees claimed a breach of fiduciary duty on the basis that their employer actively concealed that it was planning enhanced retirement programs.  In Broga, there was overwhelming evidence in the record that the defendant Northeast Utilities was planning to offer a retirement package, heavily guarded this information and, in fact, concealed this information from employees.

There is no such evidence in the record before this court.  Zito asked numerous representatives of the defendants, including his immediate supervisor, over a course of the several years preceding his retirement if there was a "package" forthcoming.  Each time, he claims, he was told there was "no package."  On February 7, 2000, Zito gave notice of his retirement to be effective April 7, 2000.  Zito states that in March of 2000, he inquired again regarding the availability of a retirement package.  Zito voluntarily elected retirement without any enhanced retirement incentives in place.

In support of his theory that defendants concealed the EPR, Zito presents the following argument: he asserts that matters concerning the Company's pension plans are planned far in advance and, therefore, defendants' serious consideration of the EPR *must have* commenced prior to his April 7, 2000 retirement.  Zito's mere assertions that pension changes are planned far in advance does not amount to specific facts to rebut defendants' motion for summary judgment.  Zito points to various representatives of the defendants who informed him that there was no package for which he was eligible, but he does not produce evidence that would show, or from which even a reasonable inference could be drawn, that these statements were

misrepresentations. Indeed, there are no facts in the record that the defendants made misrepresentations to Zito concerning future benefits. Furthermore, there is absolutely no evidence in the record to indicate that the defendants seriously considered offering a retirement incentive prior to the Zito's actual retirement in April 2000. While Zito may have asked if there would be such an offering of enhanced benefits over a course of years preceding his retirement, there is no evidence in the record that defendants were planning in April 2000 to offer enhanced benefits subsequent to Zito's retirement or any evidence in the record that any representative of the defendants made any misrepresentations to him regarding the availability of enhanced benefits or upcoming retirement incentives. The only evidence in the record is that it was not until August 17, 2000 that SBC first began to work with managers to develop proposals for an enhanced retirement package.

Zito proffers, and the court takes as true, that he "inten[ded] to retire with the most advantageous retirement provisions available to him." The fact remains that he chose to retire at a time when there was no enhanced benefit plan. He has failed in his burden to proffer evidence that the defendants concealed any planned, forthcoming enhanced benefit plan or even started to seriously consider such a plan, prior to his retirement. There is simply no evidence to support a claim that serious consideration of the EPR commenced prior to Zito's retirement.

Additionally, Zito argues that the defendants breached their fiduciary duty by establishing August 17, 2000, as the eligibility date for the Plan. In this regard, Zito

claims that setting the date as August 17, 2000, was "arbitrary and capricious". Specifically, he asserts that the defendants made an "unfounded interpretation of when 'serious consideration' actually occurred." Neither of these assertions is sufficient to support a claim for breach of fiduciary duty. Thus, even had Zito pled such a claim, on the record before it, the court concludes that such a claim fails as a matter of law.

## IV.    CONCLUSION

Defendants' Request and Amended Request for Permission to File Sur-Reply [Dkt. Nos. 59 and 61] are GRANTED. Plaintiff's Motion for Leave to file Supplemental Pleading [Dkt. No. 64] is GRANTED. Zito has failed to set forth any genuine issues of material fact upon which he could prevail at trial. As a result, the defendants' Motion for Summary Judgment [Dkt. No. 40] is hereby GRANTED. The clerk is directed to close the case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 1st day of March, 2005.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge